

# U.S. MERIT SYSTEMS PROTECTION BOARD

### Office of the Clerk of the Board

**1615 M Street, N.W.**
**Washington, D.C.  20419-0002**

Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

2024-1557

# ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of Bruce Flemming *v*. Department of the Navy, MSPB Docket No. PH-0752-18-0457-I-1, and that the administrative record is under my official custody and control on this date

on file in this Board

| | |
|---|---|
| April 8, 2024 | /s/ for |
| Date | Gina K. Grippando |
| | Clerk of the Board |

## CERTIFICATE OF SERVICE

I hereby certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Petitioner

Electronic Mail          Jason H. Ehrenbert
(via mspb@mspb.gov)      jason@ehrenberglegal.com

Respondent

Electronic Mail          Martin F. Hockey, Jr., Acting Director
(via mspb@mspb.gov)      Commercial Litigation Branch
                         Civil Division Classification Unit
                         U.S. Department of Justice
                         c/o Thee Matthews
                         thee.matthews@usdoj.gov

April 8, 2024                              /s/
(Date)                         Dinh Chung
                               Case Management Specialist

INDEX

Bruce Fleming

V.

Department of the Navy

MSPB Docket No. PH-0752-18-0457-I-1

I - Initial Appeal

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | IA | Appellant - Initial Appeal | 08/28/2018 |
| 2 | IA | MSPB - Acknowledgment Order | 08/28/2018 |
| 3 | IA | Appellant - Designation of Representative | 08/30/2018 |
| 4 | IA | Agency - Motion for Extension of Time | 09/11/2018 |
| 5 | IA | MSPB - General Order | 09/13/2018 |
| 6 | IA | Agency - Agency Representative Addition | 09/15/2018 |
| 7 | IA | Agency - Agency File Submission Part 1 | 09/20/2018 |
| 8 | IA | Agency - Agency File Submission Part 2 | 09/20/2018 |
| 9 | IA | MSPB - Preliminary Status Order | 09/24/2018 |
| 10 | IA | MSPB - Order Suspending Case Processing | 10/09/2018 |
| 11 | IA | MSPB - Preliminary Status Order | 11/15/2018 |
| 12 | IA | MSPB - Order Suspending Case Processing | 11/26/2018 |
| 13 | IA | MSPB - Preliminary Status Order | 01/28/2019 |
| 14 | IA | MSPB - Order and Summary of Telephonic | 02/04/2019 |
| 15 | IA | Agency - Motion to Preserve Deposition | 02/05/2019 |
| 16 | IA | Agency - Motion to Preserve Dipostion | 02/05/2019 |
| 17 | IA | MSPB - General Order | 02/05/2019 |
| 18 | IA | Appellant - Agreement to Mediate | 02/07/2019 |
| 19 | IA | MSPB - notice of appointment as mediator | 02/19/2019 |
| 20 | IA | MSPB - notice of scheduled mediation | 02/27/2019 |
| 21 | IA | MSPB - Preliminary Status Order | 03/25/2019 |
| 22 | IA | MSPB - notice of termination of mediation | 04/04/2019 |
| 23 | IA | MSPB - Preliminary Status Order | 04/18/2019 |
| 24 | IA | MSPB - Hearing Order | 05/06/2019 |
| 25 | IA | MSPB - Hearing Order | 05/07/2019 |
| 26 | IA | Appellant - Consent Request for Extension of | 05/14/2019 |
| 27 | IA | MSPB - General Order | 05/14/2019 |

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|-----|-------------|-------------------------|------------------------------|
| 28 | IA | Agency - Agency PreHearing Submission | 05/15/2019 |
| 29 | IA | Appellant - Appellant's Prehearing Submissions | 05/15/2019 |
| 30 | IA | MSPB - Order and Summary of Telephonic | 05/16/2019 |
| 31 | IA | Appellant - Appellant's Objection to Order and | 05/20/2019 |
| 32 | IA | MSPB - Hearing Paperwork | 05/23/2019 |
| 32-1 | IA | MSPB - PH180457I1_2019-05- | 05/22/2019 |
| 33 | IA | MSPB - Initial Decision | 07/24/2019 |
| 34 | IA | MSPB - Certificate of Service | 07/24/2019 |
| 35 | IA | Agency - Agency Representative Addition | 07/31/2019 |
| 36 | IA | Other - Hearing Transcript - May 22 2019 | 08/05/2019 |

INDEX

Bruce Fleming

V.

Department of the Navy

MSPB Docket No. PH-0752-18-0457-I-1

I - Initial Appeal

| TAB | RECORD TYPE | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | PFR | Agency - Request for Extension of Time to File | 07/31/2019 |
| 2 | PFR | MSPB - Extension of Time Order | 07/31/2019 |
| 3 | PFR | Agency - Request to Exceed Length Limitation | 09/10/2019 |
| 4 | PFR | MSPB - Order Granting Extension of the PFR | 09/11/2019 |
| 5 | PFR | Appellant - Request for Extension of Time to File | 09/19/2019 |
| 6 | PFR | MSPB - Denial of Extension of Time Order | 09/19/2019 |
| 7 | PFR | Agency - Petition for Review | 09/27/2019 |
| 8 | PFR | MSPB - Petition For Review Acknowledgment | 09/30/2019 |
| 9 | PFR | Appellant - Request for Extension of Time | 10/01/2019 |
| 10 | PFR | MSPB - Extension of Time Order | 10/01/2019 |
| 11 | PFR | Appellant - Motion to Dismiss Agency's Petition | 10/22/2019 |
| 12 | PFR | Agency - Opposition to Appellant's Motion to | 11/05/2019 |
| 13 | PFR | Appellant - Opposition to Agency's Petition for | 11/21/2019 |
| 14 | PFR | Agency - Request for Extension of Time | 11/21/2019 |
| 15 | PFR | MSPB - Extension of Time Order | 11/21/2019 |
| 16 | PFR | Agency - Reply to Appellant's Opposition to | 01/08/2020 |
| 17 | PFR | MSPB - Final Order | 01/26/2024 |

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**NORTHEASTERN REGIONAL OFFICE**

BRUCE FLEMING,                              DOCKET NUMBER
                    Appellant,              PH-0752-18-0457-I-1

          v.

DEPARTMENT OF THE NAVY,                     DATE: July 24, 2019
                    Agency.


> Jason H. Ehrenberg, Esquire, Washington, D.C., D.C., for the appellant.
>
> Terrence P. Cook, Esquire, Annapolis, Maryland, for the agency.

**BEFORE**
Mark Syska
Administrative Judge

**INITIAL DECISION**

The appellant filed this appeal to challenge his removal.  *See* Appeal File (AF), Tab 1.   The Board has jurisdiction under 5 U.S.C. §§ 7511-7514; 5 C.F.R. Part 752; 5 C.F.R. § 1201.3(a)(1).   For the reasons that that follow, the agency's removal decision is REVERSED.

**Background**

The appellant has served as a Professor at the United States Naval Academy at Annapolis, Maryland (academy or agency) for approximately thirty-one years.  The appellant served in the English Department, and the case pertains to his conduct in a plebe (freshman) class of HE 111: Rhetoric & Introduction to Literature during the 2017/2018 academic year.  On January 19, 2018, a midshipman (MD) filed a lengthy complaint about the appellant regarding the Fall

2017 section of HE 111. *Id*. at 115-128. This complaint was ultimately accompanied by more limited complaints from four other midshipmen. *Id*. at 129-133. As a consequence, a faculty panel was assembled to investigate the complaints, and the appellant was taken out of the classroom during the investigation.

The panel investigated a variety of purported misbehavior: (1) Discriminating against students on political grounds, in particular referring to two students as "right-wing extremists;" (2) using demeaning language to refer to students, specifically "goldfish" and "midsheeple;" (3) allowing students to tell jokes of a sexual nature in class; (4) regularly discussing sexual matters unrelated or only tangentially related to readings in class, including transgender reassignment surgery and anal sex; (5) emailing partially-clothed photos of himself to his students; (6) touching students on the neck, shoulders, and back in class without their consent; (7) displaying photos of his son's date and making derogatory remarks about her and her mother in class; (8) purposely mispronouncing an Asian student's last name multiple times and telling him to "fuck off" when he repeatedly corrected you; (9) making it known that you have previously litigated complaints against you by Navy administrators and any future complaint is likely to fail because you have tenure; (10) additional finding one - using profanity in classroom discussions and email to students; (11) additional finding two – spending a significant amount of class time on "off topic" discussions; and (12) additional finding number three – making inappropriate and/or unprofessional remarks in class. *Id*. at 97-113. The appellant was twice invited to address the panel, and he declined by email twice: (1) His first email led to a reprimand because it mentioned private student information; and (2) the second email provided his colorful response to the charged conduct. *See* AF, Tab 8 at 123-134.

On May 18, 2018, the panel issued its report, which began with effusive praise for the appellant – that the students in his upper level class (HE 302) for

the academic year had a universally positive opinion of him, enjoyed his teaching, and deemed him an excellent or good teacher. *See* AF, Tab 7 at 97. The report also notes that the students in the plebe class (HE 111) largely echoed these sentiments, but for seven students that rated him a poor instructor. *Id*. The panel then went into the various complaints. Ultimately, the panel concluded that complaints 1, 3, 8, 9, additional finding one, and additional finding two could not be confirmed, or, if confirmed, were <u>not</u> misconduct. *Id*. at 113. The panel also concluded that complaints 2, 5, 6, 7, and additional finding three did occur and did qualify as unprofessional behavior. *Id*. As to complaint four, the panel concluded that discussions of sex that were germane to the reading assignments were appropriate, but the appellant's discussion of his personal experiences had no place in the classroom. *Id*.

On June 26, 2018, the academy proposed the appellant's removal. *See* AF, Tab 7 at 79-84. The proposed removal was based on one charge of "Conduct Unbecoming a Federal Employee," which had one specification:

> During the fall semester of Academic Year 2017-2018, you engaged in unprofessional conduct in the classroom and outside the classroom. Your conduct included, but is not limited to: (1) referring to students as "right-wing extremists," and/or words to that effect; (2) classroom comments/discussion regarding anal sex, oral sex, and transgender surgery; (3) emailing partially clothed pictures of yourself to students after having been counseled that doing so was inappropriate and your agreement not to do so in the future; (4) touching students without their approval; (5) referring to your own sexual experiences; (6) repeatedly mispronouncing an Asian-American student's name despite being corrected several times by the student; and (7) making demeaning sexually-related comments about a young woman attending a dance with your son and similar offensive comments about the young woman's mother.

*See* AF, Tab 7 at 79.[1] The appellant's counsel provided a lengthy response to the proposal. *Id*. at 33-78. Ultimately, the deciding official ordered the appellant removed, effective August 17, 2018. *Id*. at 18, 20-25.

---

[1] The agency's decision to include specifications 1, 2, and 6 appear at odds with the panel's conclusions.

This appeal followed. I held the appellant's requested hearing, and nine witnesses (of the thirteen that had been approved) testified: (1) Captain Robert Chadwick, Commandant of Midshipmen; (2) Professor Keith Lindler, chair of the investigation panel; (3) Midshipman MD, primary complaining witness; (4) Midshipman AB, secondary complaining witness; (5) Midshipman RJ, secondary complaining witness; (6) Midshipman JR, secondary complaining witness; (7) Midshipman BG, secondary complaining witness; (8) Mr. Andrew Phillips, Academic Dean & Provost, deciding official; and (9) Professor Anne Marie Drew, English Professor. *See* AF, Tab 32 (Hearing CD). After Prof. Drew (the appellant's first witness) testified, the appellant (surprisingly) elected not to testify, nor call any further witnesses, and the hearing immediately proceeded to closing arguments. *Id*.

**Legal Standards**

Adverse Action

The Board may uphold an agency decision to take adverse action against an employee only if the charge is supported by preponderant evidence. 5 U.S.C. § 7701(c)(1)(B); 5 C.F.R. § 1201.56(a)(1)(ii). Preponderant evidence is the degree of relevant evidence a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.56(c)(2). In addition to proving the charge, the agency also has the burden of establishing that its action promotes the efficiency of the service (the nexus requirement), meaning the removal action relates to either the appellant's ability to accomplish his duties or some other legitimate government interest. 5 U.S.C. § 7513. Finally, the agency must show that its penalty selection was not so excessive as to be an abuse of discretion, and not otherwise arbitrary or unreasonable. *Douglas v. Veterans Administration,* 5 M.S.P.R. 280, 296-306 (1981).

Conduct Unbecoming

In analyzing a charge of "conduct unbecoming," the Board relies upon the term's ordinary meaning, holding that unbecoming conduct is: "unattractive; unsuitable …, detracting from one's … character, or reputation; [or] creating an unfavorable impression." *Miles v. Department of the Army,* 55 M.S.P.R. 633, 637-38 (1992) (intentionally killing deer with government vehicle was conduct unbecoming). A charge of "conduct unbecoming" has no specific elements of proof; it is established by proving that appellant committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security,* 113 M.S.P.R. 509, ¶ 9 (2010) (consuming alcohol in government vehicle was conduct unbecoming). In this way, an agency may describe actions that constitute misbehavior in narrative form and have its discipline sustained if the efficiency of the service suffers because of the misconduct. *Id.* However, a general charge must be described in sufficient detail to allow an appellant to make an informed reply. *See Cross v. Department of the Army,* 89 M.S.P.R. 62, 68 (2001) (changing subordinate's appraisal without notice to employee was conduct unbecoming). *Cf. Colbert v. U.S. Postal Service,* 93 M.S.P.R. 467, 471 (2002) (narrative charge acceptable so long as it describes misbehavior) (manipulation of timecards was "unacceptable conduct").

Whistleblower Affirmative Defense

The WPA prohibits an agency from taking a personnel action against an employee for disclosing information that the employee reasonably believes evidences a violation of law, rule, or regulation; gross mismanagement; a gross waste of funds; an abuse of authority; or a substantial and specific danger to public health or safety. *See Chambers v. Department of the Interior*, 602 F.3d 1370, 1375-76 (Fed. Cir. 2010) (citing 5 U.S.C. § 2302(b)(8)); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 (2013); *see also Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 11 (2014) (the employee need not "label" the disclosure correctly). The disclosure must be specific and detailed,

not just vague allegations of wrongdoing. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 6 (2016). At a hearing, the appellant must prove his affirmative defense by preponderant evidence. *See Scoggins*, 123 M.S.P.R. 532, ¶ 5. If the appellant proves that he made a disclosure and the disclosure was a contributing factor in an adverse personnel action, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the disclosure. *See Whitmore v. Department of Labor*, 680 F.3d 1353, 1364 (Fed. Cir. 2012).

Other Protected Activity Affirmative Defense

To establish a case of retaliation for engaging in a protected activity, the appellant must show that a prohibited consideration was a factor in the contested personnel action. *See Savage v. Department of Army*, 122 M.S.P.R. 612, ¶ 41 (2015). But the Board will only reverse the action if the appellant can show this retaliation was a "but for" cause of the action. *Id.*, ¶ 48. Thus, if the appellant shows the prohibited consideration was a factor in an agency decision, the agency can avoid corrective action by showing that it would have taken the same action in the absence of the discriminatory or retaliatory motive. *Id.*, ¶ 51.

Harmful Error Affirmative Defense

To prove the affirmative defense of harmful error, the appellant must show that the agency violated its own procedures, and that this error was harmful (would change the result).

As to the witnesses, I had the opportunity to observe each witness, and I carefully considered his/her demeanor. *See Hamilton v. Department of Veterans Affairs*, 115 M.S.P.R. 673, ¶ 18 (2011).[2]

---

[2] To resolve any credibility issues, I utilized a *Hillen* analysis. An administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) The witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events;

<u>Analysis & Fact-findings</u>

The appellant appears to be a rather unique professor at the academy. He is irreverent, theatrical, fashion-conscious, outspoken in his criticism of the academy (both in the classroom and his writings), and liberally sprinkles his classes with profanity and discussions of sexually-related topics (from condom use to transgender surgery). The appellant is also a "work-out fiend," and in good enough shape to regularly exercise with the well-conditioned midshipmen at the gyms and swimming pools on campus (where typical attire is swim trunks and other workout gear). Moreover, the overwhelming majority of his students enjoyed the appellant and his teaching style. Indeed, photographs were frequently taken in class, and they reflect a "loose" atmosphere – with the appellant dressed in costume (pirate), students trying on the appellant's designer sport coat or cowboy hat (with arms around each other's shoulders), carrying classmates around, and flexing their biceps en masse. *See, e.g.*, AF, Tab 29 at 20, 21, 24, 26-28, 55-60, 62, 65-69. Indeed, Lindler stated the appellant was a great classroom teacher, Phillips conceded that he could be a very effective teacher, and Drew testified that she had reviewed over a thousand of his student evaluations (over her 30 years) and over 90% were positive – an unheard of success rate. Hearing CD.

But a small group of students – one in particular – disapproved of the appellant's classroom performance. Further, the appellant's classroom behavior and writings appear to have created long-standing tension with the academy's more traditional hierarchy. In addition, this case suggests a potential tension between the concepts of tenure and academic freedom – concepts the academy states it respects – with the basic process of disciplining a federal employee under Title V and the relevant regulations. The appellant is both a professor at an institution of higher learning and a federal employee at the academy.

---

and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

<u>The Charge</u>

The agency ultimately fails to carry its burden of proof regarding the charge for a host of reasons.  At the outset, their primary witness had severe credibility issues.   In addition, the purported "victims" of the appellant's actions did not generally take offense or have any actual issue with the appellant.  Moreover, much of the charged conduct, as noted by the investigating panel, did not appear to be actual misconduct in the context of free-wheeling classroom discussions.   Further, I note that the panel members taught in subject areas where class discussions were unlikely to include profanity or sexual discussions – mechanical engineering and chemistry.   Hearing CD.   Yet, they readily recognized that profanity and the discussion of sexual topics could be completely appropriate in the appellant's class.   Moreover, the one English professor who testified noted that profanity and sexual discussions were not uncommon when discussing literature (which frequently contains these matters).[3]   *Id.*(Drew).   A lack of notice was also a significant issue regarding certain specifications, as the appellant had taught in his same distinctive manner for decades.

<u>General Credibility</u>

Only the primary complaining midshipman testified for any length of time; the secondary complaining midshipman generally testified for bare minutes.  As to the latter, I note their testimony was roughly consistent with their prior statements (with one notable exception).   Hearing CD.   More specifics will be noted below.

As to the former, I must conclude that MD's testimony, like his written complaint, is greatly exaggerated -- to the point of being hard to credit on certain points.   Hearing CD; *see also* AF, Tab 7 at 115-128.   MD also appeared to have a motive to exaggerate his claims about the appellant.   Further, MD's limited

---

[3] Drew emphasized this point by noting some of the English professors are Marines. Hearing CD.

credibility is critical because, as the deciding official conceded, in the absence of MD's complaint (and it being believed), "we would not be here." Hearing CD.

A few examples of MD's questionable assertions are instructive. In his statement and testimony, MD stated a "plethora" of people were "suffering" or "crying," but on cross he conceded that it was really only one person. Hearing CD.[4] He also conceded his reference to repeated "attacks" by the appellant all referred to one email (discussed below). *Id*. Further, he stated that the "obscene, X-rated, and sexually explicit" comments were the appellant's discussions of such things as condom use, transgender surgery, and his expressed opinion that sexual matters should be discussed openly. *Id*.

Significantly, on cross, MD also recounted that during a private help session in the appellant's office, he began to believe that he would be sexually assaulted and looked about for a weapon to potentially fight the appellant off. Hearing CD; *see also* AF, Tab 7 at 123. Notably, nothing occurred beyond discussing the appellant's written work, and the appellant did not report his perceived "imminent attack" to anyone (although he would later complain about far smaller matters). *Id*. Further, the appellant's direct testimony about this session only included a reference to the appellant looking up MD's SAT scores and opining "that explains a lot." Hearing CD. Moreover, MD completely undermines his "attack claim " with an email from late in the semester in which MD states that he tried to get into the appellant's class for the following semester, thanked the appellant for everything, and said he would stay in touch with the appellant.[5] *See* AF, Tab 29 at 18.

MD's reaction to the appellant's photo – a shirtless half torso with the focus on a flexed bicep -- is similarly difficult to credit. *See* AF, Tab 8 at 136.

---

[4] He also conceded that many students like the appellant - the "Fleming Faithful." Hearing CD.

[5] MD suggested in his testimony that he was merely trying to curry favor and save his grade with this email. Hearing CD. Admitting to making misstatements to curry favor – serve one's personal interests – does nothing for one's credibility.

Indeed, MD stated that he "agonized" over whether the photo constituted "sexual assault or sexual harassment. " *See* AF, Tab 7 at 121; Hearing CD.   The former is nonsense while the latter is merely a long stretch.  I note that taking photos was common in the appellant's class, and the record included photos of the entire class (including MD) flexing their biceps – flex being a writing concept the appellant encouraged.   Hearing CD; *see also* AF, Tab 29 at 27-28, 66, 69.  In this context, MD's purported reaction appears feigned.

At bottom, MD having the appellant as his instructor in his first semester of college was something of the perfect storm.    An eighteen year-old from a conservative, religious family, who had only attended religious schools and only experienced academic success versus the profane, irreverent, brutally critical (read admitted very tough grader[6]) and highly theatrical appellant had conflict written all over it.    MD testified, with some indignation, that the appellant gave him his first "C" of his academic life, and he had noted in his statement that grading was where the appellant "asserted dominance" over plebes.   Hearing CD. That high grades might not come as easily in college as they did in high school, particularly in a hyper-competitive environment like the academy, did not seem to occur to him.    MD also conceded that a low grade could impact upon his future posting. *Id*.  In sum, MD gave the impression his complaint was motivated more by animus for his grade than any sort of genuine concern about the appellant's teaching style.

Thus, MD's statements, when not corroborated, were of limited value. Further, as noted by Lindler, it also appears that MD asked/cajoled/encouraged the other complaining midshipman to file complaints.   Hearing CD.   As previously noted, their complaints were short (often less than a page) and some included the disclaimer that they were not personally offended by the appellant's actions.  *See* AF, Tab 7 at 129-134.  These witnesses generally reiterated the fact

---

[6] *See* AF, Tab 29 at 45-53.

they were not personally offended by the appellant's conduct in their testimony. Hearing CD (AB, JR, BG).

a.  Specification One – "right-wing extremists"

This specification is based upon an email that the appellant sent to two midshipmen (including MD) on September 26, 2017, *see* AF, Tab 8 at 135, that the panel addressed and found did not constitute "political discrimination" or other inappropriate conduct, *see* AF, Tab 7 at 98-99.   The email quite simply cannot be read as politically discriminatory.   While the email begins with the phrase "right-wing extremists,"[7] the appellant goes to great pains to state he would make the same comments to "left-wing extremists" and would say the same thing to "Bernie" [Sanders].  *See* AF, Tab 8 at 135.  Further, the obvious thesis of the email was that the students had erred in failing to justify their positions – by providing authority for assertions and addressing obvious counter-arguments.  *Id*. Indeed, the appellant had summed up the failing as follows---"Tell Bill why" and "it's not a left-wing thing. It's a justify that thing." *Id.*   The reference to politics was incidental[8] (and tongue in cheek) to the real message – provide supporting arguments for your positions – which is a completely appropriate criticism for a student paper.   Specification one is simply does not describe misconduct.

Specification one is NOT SUSTAINED.

b.  Specification Two - comments regarding oral/anal sex and transgender surgery & specification five - referring to his own sexual experiences (panel complaint #4)

---

[7] The midshipmen were taking stereotypical "right-wing" positions - anti-tax and anti-gun control.

[8] Even if it was not, my conclusion would not change.   Drew testified, without contradiction, that professors often gave tongue-in-cheek nicknames to various groups of students (*e.g.*, "the theater geeks").  Hearing CD.  Moreover, MD's claimed "political discrimination" had no further manifestations – he testified the appellant commented on his other papers, but he "could not remember" the comments (or whether he disagreed with them).  *Id.*

The panel summarized the evidence on this issue, and concluded that discussions of the topic were appropriate as it related to assigned reading, but not appropriate to the extent the appellant referred to his personal experiences.    *See* AF, Tab 7 at 101-103.    In his email response, the appellant conceded the conduct and provided his justifications for it.    *Id*. at 102-103.

Specification two charged discussions of various sexual topics generally, contrary to the panel's conclusion that such topics were appropriate if applicable to the reading assignments.    More significantly, Phillips did not take into account that the assigned readings involved sexual topics that warranted class discussions.  Hearing CD.    Phillips was also unaware that the appellant wrote on transgender issues and one of the assigned readings involved transgender issues.    *Id*.    Thus, the deciding official did not consider the fundamental issue of whether the academic context warranted the discussion of sexual topics.    Moreover, there does not appear to be a rule or policy against discussing sexual topics in an academy classroom.    *Id*.    In addition, the appellant does not appear to have received any notice – prior counseling or letter of reprimand – that discussions of sexual topics in a *college* classroom were forbidden or greatly restricted.    On this record, it's difficult to see any misconduct.

As to specification 5, the panel did conclude that the appellant's references to his own experiences were inappropriate.    However, as before, the appellant does not appear to have received any notice about this "forbidden" topic, nor does there appear to be an express prohibition of this topic.[9]  Hearing CD.

Specifications two & five are NOT SUSTAINED.

c.  Specification three – emailing partially clothed photos to students after being counseled and agreeing not to do so (panel complaint #5).

The panel concluded that these incidents had occurred, and that the appellant's focus on his prior counseling was disingenuous.    *See* AF, Tab 7 at

---

[9] The academy's position, which is somewhat murky, appears to be that discussions of personal experiences can quickly cross the line into sexual harassment.    In essence, the appellant's conduct <u>could</u> become misconduct.

103-106.   There is no real dispute that the appellant was previously counseled for sending partially clothed photos of himself to students in 2015, *see* AF, Tab 8 at 158-159, and that he engaged in the behavior again in 2017, *see* AF, Tab 8 at 136; Tab 29 at 77-78.   But again is this actual misconduct, as opposed to being, as Drew put it, a dumb decision?   Hearing CD.

As to sending photos of himself, other than MD, no one who received the photos appeared particularly offended by them.   Indeed, the comparative bodybuilder photos (the young appellant in posing trunks and the current appellant posing shirtless) had been prompted by a student's question as to how the appellant physically compared to himself twenty-years ago.   *See* AF, Tab 29 at 77-78.   Notably, the student who received the photo, while providing it to the panel as requested, was not a complaining witness.   As to MD, he admitted to sending a photo of a man jogging in a speedo to the appellant.   Hearing CD; *see also* AF, Tab 29 at 22.   MD attempted to back-pedal by saying the appellant asked for a copy, but, even if true, the appellant would not have known to ask if MD had not mentioned that he had taken such a photo.   *Id*.   Thus, MD's purported "offense" at a shirtless photo is hard to believe.   On this record, I again cannot find misconduct.

Specification three is NOT SUSTAINED.

d. Specification 4 – touching students without their approval (panel complaint #6).

The panel concluded that this specification was fully supported by the evidence, and the appellant conceded hugging and other touching. *See* AF, Tab 7 at 106-107.   The panel also found the appellant's assertion that he did not touch plebes was inconsistent with the evidence.   *Id*.   I must agree, as midshipman AB testified to the appellant rubbing his back for about fifteen seconds on two occasions (when he was a plebe).   Hearing CD.

However, there is no policy against touching – beyond that it be consented to and not constitute sexual harassment or other misconduct – so there is an

element of line drawing based upon common sense.   Hearing CD.   Indeed, Chadwick took the view that only hand-shakes or a pat on the back were appropriate, while Drew viewed hugs appropriate because the students get to know them (but one must be sensitive to circumstances).  *Id*.  Chadwick also tried to draw a temporal line – any contact over 4-5 seconds was "prolonged" and likely to be improper.  *Id*.

Here, the appellant admitted to hugs in his email response, but Drew admitted the same (and stated other professors do too) and was not cautioned or disciplined for it.  The only other contact presented was AB getting his back rubbed.  *Id*.  But AB emphasized that he was not offended, enjoyed the appellant's class, and had no problem with the appellant personally.  *Id*.  Again, in these circumstances, I am hard pressed to find misconduct.

Specification four is NOT SUSTAINED.

e.  Specification six – repeatedly mispronouncing an Asian student's name (panel complaint #8).

The panel considered midshipman RJ's statements and the appellant's denial.  *See* AF, Tab 7 at 108.  The panel found RJ credible, but nonetheless found in favor of the appellant on this point for lack of corroboration.  *Id*.

I part company with the panel on the credibility question.   RJ's testimony, while consistent with his complaint, *see*  AF, Tab 7 at 133-134, is not consistent with his statements in the panel's questionnaire, *see* AF, Tab 8 at 59-60. Indeed, his comments to the questionnaire suggest that he was not positive the mispronunciations were deliberate and did not mention the (fairly significant) "fuck off" comment.  *Id*.  Moreover, the lack of corroboration from the rest of the class is particularly telling given the panel used a fairly specific question – essentially does the appellant ever mispronounce names, particularly Asian names?  *See* AF, Tab 8 at 133-173.   If the incidents had occurred as charged, one would think that question would jog the students' memories.

Specification six is NOT SUSTAINED.

f. Specification seven – making demeaning remarks about his son's date and her mother (panel complaint #7).

The panel noted that the appellant conceded that he in fact engaged in this behavior. *See* AF, Tab 7 at 107-108. The panel concluded that the appellant was free to discuss his family and opine on dress length, but it was inappropriate to discuss the girl or her mother's sexual intentions.[10] *Id*. at 108. Before me, both MD and JR testified about the incident. Hearing CD.

As before, I am hard pressed to find misconduct here, in context. There appears to be no prohibition on discussing one's family, and, as noted above, there does not appear to be a prohibition about discussing sexual topics.

Specification 7 is NOT SUSTAINED.

Accordingly, because none of the specifications were sustained, the Charge is NOT SUSTAINED. In addition, nexus is ultimately irrelevant in light of the agency's failure to prove the charge.

<u>Affirmative Defenses</u>

The appellant's affirmative defenses were compromised by his failure to testify and to call his remaining witnesses.[11] Notably, other than a few minor op-ed pieces, there is no evidence beyond the titles (in hyperlinks) of/or general references to the appellant's purportedly most significant writing(s). *See* AF, Tab 29 at 4-8, 30-36, 103-106. On this record, there is no basis for finding that any of these writings constituted or contained disclosures under 5 U.S.C. § 2302(b)(8). Indeed, the basic subject matter of the more significant articles – whether the service academies still serve a purpose/should be kept open -- suggest that they were opinion or "think" pieces. This would suggest they did not amount to (or contain) protected disclosures. *See LaChance v. White*, 174 F.3d 1378, 1381

---

[10] Although one wonders what else criticizing the inappropriately short length of a woman's skirt could imply.

[11] Indeed, even the closing argument focused primarily on the weaknesses of the agency's evidence and the unreasonableness of the penalty. Hearing CD.

(Fed. Cir. 1999) (the WPA is not a weapon in arguments over policy); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 7 (2016) (general philosophical or policy disagreements do not constitute protected disclosures).   In any event, the burden is on the appellant to present evidence establishing his disclosures by a preponderance of the evidence, and he has not done so.

As to whether the agency retaliated against the appellant for exercising his First Amendment rights, the appellant has again failed to carry his burden of proof.   On this record, one simply cannot conclude that the appellant's speech was a "but for cause" of this action.   While, the agency officials were aware of his various articles, and had exchanged emails about them, nothing in the emails constitutes a "smoking gun."   *See generally* AF, Tab 29.   Notably, the email correspondence between the various management officials regarding the appellant's various articles do not reflect much beyond a mixture of curiosity and vague annoyance.   Phillips also testified that he had long before stopped reading the appellant's articles, as he found them repetitive.  Hearing CD.   I do note that the agency officials – Chadwick and Phillips -- were quite hostile about the appellant in their testimony.   *Id*.  But this seemed to be based upon his classroom behavior, that both believed showed that he was not modeling appropriate academy behavior of "dignity and respect" and failing as a role-model.   *Id*. Further, the appellant's own witness also largely undermines his claim.  Notably, she testified that the last four superintendents did not like the appellant's personal behavior or writings.   *Id*.  Yet, he has served the academy for over thirty years, which suggests not liking the appellant's writings and retaliating against him for those writings remained two very different things.

The harmful error claim is also unpersuasive.   Indeed, none of the American Association of University Professors (AAUP) filings suggest that a tenured professor cannot be removed for serious misconduct or incompetence (the grist of Chapter 75 and Chapter 43).   *See* AF, Tab 7 at 39, 75; Tab 29 at 37, 72. Thus, the standards for removing a tenured professor and a federal employee are

not per se incompatible. More significantly, there is no evidence that the academy was obligated to follow the AAUP standard. While the academy does state that it adopts the AAUP guidelines for academic freedom and, to some extent, tenure (but noting the academy's unique circumstances), there is no real dispute that the academy had its own process (adopted in 2016), which ultimately ends in a proceeding before the Board for the disciplined professor. *See* AF, Tab 8 at 149-155; Tab 29-114-121. Indeed, the issue appeared to be a question of confusion rather than one of academy authority – that the agency should not state on the hiring end that it generally follows AAUP standards while conducting disciplinary actions through a different process. Hearing CD (Drew). Thus, on the current record, there appears to be no harmful error.

Lastly, Phillips' testimony also undermines the appellant's affirmative defenses. Notably, he opined that in the absence of the MD complaint (and the complaint being believed), the disciplinary action would not have taken place. Hearing CD.

**DECISION**

The agency's action is REVERSED.

**ORDER**

I **ORDER** the agency to cancel the removal and to retroactively restore appellant effective **August 17, 2018**. This action must be accomplished no later than 20 calendar days after the date this initial decision becomes final.

I **ORDER** the agency to pay appellant by check or through electronic funds transfer for the appropriate amount of back pay, with interest and to adjust benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations no later than 60 calendar days after the date this initial decision becomes final. I **ORDER** the appellant to cooperate in good faith with the agency's efforts to compute the amount of back pay and benefits

due and to provide all necessary information requested by the agency to help it comply.

If there is a dispute about the amount of back pay due, I **ORDER** the agency to pay appellant by check or through electronic funds transfer for the undisputed amount no later than 60 calendar days after the date this initial decision becomes final. Appellant may then file a petition for enforcement with this office to resolve the disputed amount.

I **ORDER** the agency to inform appellant in writing of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied. If not notified, appellant must ask the agency about its efforts to comply before filing a petition for enforcement with this office.

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. I **ORDER** the agency to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**INTERIM RELIEF**

If a petition for review is filed by either party, I **ORDER** the agency to provide interim relief to the appellant in accordance with 5 U.S.C. § 7701(b)(2) (A). The relief shall be effective as of the date of this decision and will remain in effect until the decision of the Board becomes final.

Any petition for review or cross petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the required interim relief or by satisfying the requirements of 5 U.S.C. § 7701(b)(2)(A)(ii) and (B). If the

appellant challenges this certification, the Board will issue an order affording the agency the opportunity to submit evidence of its compliance. If an agency petition or cross petition for review does not include this certification, or if the agency does not provide evidence of compliance in response to the Board's order, the Board may dismiss the agency's petition or cross petition for review on that basis.

FOR THE BOARD:                    _____
                                  Mark Syska
                                  Administrative Judge

## ENFORCEMENT

If, after the agency has informed you that it has fully complied with this decision, you believe that there has not been full compliance, you may ask the Board to enforce its decision by filing a petition for enforcement with this office, describing specifically the reasons why you believe there is noncompliance. Your petition must include the date and results of any communications regarding compliance, and a statement showing that a copy of the petition was either mailed or hand-delivered to the agency.

Any petition for enforcement must be filed no more than 30 days after the date of service of the agency's notice that it has complied with the decision. If you believe that your petition is filed late, you should include a statement and evidence showing good cause for the delay and a request for an extension of time for filing.

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date. *See* 5 C.F.R. § 1201.112(a)(4).

### NOTICE TO APPELLANT

This initial decision will become final on **August 28, 2019**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

### BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and

may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative

judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the <u>earlier</u> date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

### ATTORNEY FEES

If no petition for review is filed, you may ask for the payment of attorney fees (plus costs, expert witness fees, and litigation expenses, where applicable) by filing a motion with this office as soon as possible, but no later than 60 calendar days after the date this initial decision becomes final. Any such motion must be

prepared in accordance with the provisions of 5 C.F.R. Part 1201, Subpart H, and applicable case law.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.   5 U.S.C.  § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.   Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

within **60 calendar days** of <u>the date this decision becomes final</u>.   5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** <u>**Judicial or EEOC review of cases involving a claim of discrimination**</u>.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on your whistleblower claims only, excluding all other issues, then you may file a petition for judicial review

with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.   The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>



# DFAS CHECKLIST

## INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



# NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Mail          Bruce Fleming
                         739 Governor Bridge Rd
                         Davidsonville, MD 21035


<u>Appellant Representative</u>

Electronic Mail          Jason H. Ehrenberg, Esq.
                         Bailey & Ehrenberg Pllc
                         1015 18th Street, N.W.
                         Suite 204
                         Washington, D.C., DC 20036

<u>Agency Representative</u>

Electronic Mail          Terrence P. Cook, Esq.
                         Department of the Navy
                         U.S. Naval Academy - Superintendent's Office
                         121 Blake Road
                         Annapolis, MD 21402


| July 24, 2019 | Roy D. Mazique |
| --- | --- |
| (Date) | Paralegal Specialist |

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| BRUCE FLEMING,<br>　　　　　Appellant, | DOCKET NUMBER<br>PH-0752-18-0457-I-1 |
| 　　　v. | |
| DEPARTMENT OF THE NAVY,<br>　　　　Agency. | DATE:  January 26, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Jason H. Ehrenberg</u>, Esquire, Washington, D.C., for the appellant.

<u>Alison Gray</u>, Esquire, Washington, D.C., for the agency.

<u>Terrence P. Cook</u>, Esquire, Annapolis, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The agency has filed a petition for review of the initial decision, which reversed the appellant's removal.  The appellant has filed a motion to dismiss the agency's petition for failure to provide interim relief.  For the reasons discussed below, we DENY the appellant's motion to dismiss, GRANT the agency's

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

petition for review, and REVERSE the initial decision.  The agency's action is SUSTAINED.

## BACKGROUND

The appellant is a tenured Professor of English at the U.S. Naval Academy in Annapolis, Maryland.  At issue are certain aspects of the appellant's conduct in teaching first-year Rhetoric & Introduction to Literature, HE 111, during the fall semester of the 2017/2018 academic year.  In January 2018, five different students filed complaints with the Vice Academic Dean alleging that the appellant had made various offensive comments, discussed inappropriate matters during class, and engaged in other unprofessional conduct.  Initial Appeal File (IAF), Tab 7 at 115-34.  The Vice Academic Dean directed the Director of the Division of Humanities and Social Sciences to supervise a fact-finding inquiry.  *Id.* at 114.

The Division Director assembled a panel of three senior faculty members, who interviewed the students from the appellant's fall classes, as well as two other students whose names had come up regarding one matter.  *Id.* at 135-89; IAF, Tab 8 at 4-119.  The appellant was invited to address the panel, but he declined to do so.  IAF, Tab 8 at 120-21; IAF, Tab 28 at 91.  He did reply by email, IAF, Tab 8 at 123, and he also sent an email message to the entire faculty in which he generally complained about the unfairness of the process, *id.* at 130.  Thereafter, the panel issued a report finding that a number of the matters as described in the complaints had occurred and qualified as unprofessional behavior.  IAF, Tab 7 at 97-113.

On June 26, 2018, the Division Director proposed the appellant's removal on a charge of Conduct Unbecoming a Federal Employee with seven specifications.  The agency alleged that the appellant:  (1) referred to students as "right-wing extremists"; (2) made comments about and discussed anal sex, oral sex, and transgender surgery; (3) emailed partially clothed photos of himself to students after having been counseled that doing so was inappropriate and agreeing

to refrain from doing so; (4) touched students without their approval; (5) referred to his own sexual experiences; (6) repeatedly mispronounced an Asian-American student's name despite being corrected several times; and (7) made demeaning, sexually related comments about a child and her mother because of how they were dressed.[2]  *Id.* at 79.  After the appellant responded,  the Academic Dean and Provost issued a decision sustaining all seven specifications and removing the appellant effective August 17, 2018.  *Id.* at 18-21, 33.

The appellant filed a Board appeal contesting the merits of the removal and raising several affirmative defenses, including retaliation for whistleblowing, violation of his First Amendment rights, and harmful procedural error.  IAF, Tabs 1, 30.  After a hearing, the administrative judge issued an initial decision not sustaining any of the seven specifications and reversing the removal on that basis.  IAF, Tab 33, Initial Decision (ID).  The administrative judge considered the appellant's affirmative defenses but found that he failed to prove them.  ID at 16-17.  He ordered the agency to provide interim relief if either party filed a petition for review.  ID at 19.

The agency has filed a petition for review, Petition for Review (PFR) File, Tab 7; the appellant has filed a response, PFR File, Tab 13; and the agency has filed a reply, PFR File, Tab 16.  The appellant has also moved to dismiss the agency's petition for failure to comply with the interim relief order, PFR File, Tab 11, and the agency has responded in opposition to that motion, PFR File, Tab 12.

## ANALYSIS

<u>The agency is in compliance with the administrative judge's interim relief order.</u>

If the appellant is the prevailing party in the initial decision and the administrative judge orders interim relief, a petition for review filed by the

---

[2] In proposing the appellant's removal, the agency considered that he had previously been issued a Letter of Reprimand for disclosing a student's personally identifiable information.  IAF, Tab 7 at 81.  The Reprimand was issued on May 11, 2018.  *Id.* at 94.

agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the interim relief ordered, or by making a determination that returning the appellant to the place of employment would cause undue disruption to the work environment. *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 6 (2015); 5 C.F.R. § 1201.116(a); *see* 5 U.S.C. § 7701(b)(2)(A)(ii). If an agency makes a determination that an employee will pose an undue disruption, it must nonetheless return the employee to a pay status pending the outcome of its petition for review, and provide "pay, compensation, and all other benefits as terms and conditions of employment" pending the outcome of the petition for review. 5 U.S.C. § 7701(b)(2)(B). The Board's review of interim relief is limited to determining whether the agency actually made an undue disruption determination and whether the employee has received appropriate pay and benefits. The Board does not have the authority to review the merits of an undue disruption determination. *King v. Jerome*, 42 F.3d 1371, 1375-76 (Fed Cir 1994).

In this case, the agency's petition for review was accompanied by a certification that it has complied with the administrative judge's interim relief order by reinstating the appellant to his position, effective the date of the initial decision, and a Standard Form 50 (SF-50), Notification of Personnel Action, reflecting the interim appointment. PFR File, Tab 7 at 61, 63. The certification states, however, that the appellant has not been returned to the classroom. *Id*. at 61. In support of the certification, the agency has submitted a declaration by the Academic Dean and Provost, stating that based on the seriousness of the charged misconduct, he determined that the appellant's presence in the classroom and his engaging with midshipmen in any advisory role would be an undue disruption to the workplace. *Id.* at 65. He emphasized that his determination was guided by the Naval Academy's responsibility to provide a positive and supportive classroom and advisory environment which respects the dignity of the individual, promotes the education and professional development of future Navy

and Marine Corps leaders, and ensures the wellbeing of the midshipmen.  *Id.* at 66.  The agency has also submitted a copy of the Academic Dean and Provost's August 7, 2019 letter to the appellant explaining that, for the reasons set forth above, in lieu of teaching and advising midshipmen, his assignments during the pendency of the petition will include scholarly research and writing and service to the school.  *Id.* at 67.

In his motion to dismiss, the appellant argues that the agency has failed to provide the necessary interim relief because, by not allowing him to teach, it has denied him the possibility of receiving student and peer evaluations, which are a significant component of yearly considerations in the merit pay increases that are a condition of his employment.  PFR File, Tab 11.  The appellant likens merit pay increases to overtime which is required as part of interim relief when the employee proves that he is entitled to it as a condition of employment.  *Id.* at 7.

In its response to the appellant's motion, the agency argues that the three performance elements for Academy faculty that form the basis for merit increases are teaching, scholarship, and service, and that, when a faculty member does not perform tasks in one of the elements during the rating period, the member is still eligible for a merit increase based on the element(s) in which he or she has performed tasks.[3]  PFR File, Tab 12 at 6-7.  Thus, the agency argues that, when the appellant is eligible for a merit increase, it will be based on his performance in the elements of scholarship and performance.  *Id.* at 7.  In support of its position, the agency has submitted a declaration under penalty of perjury by the Vice Academic Dean, who oversees the Academy's performance plan program. *Id.* at 16.  The agency also disputes the appellant's argument that merit increases should be considered like overtime.  *Id.* at 11-12.

We find that the agency has met its initial burden of demonstrating that it is in compliance with the administrative judge's interim relief order.  Specifically,

---

[3] As an example, the agency references a professor who, because of absence due to maternity leave, is not in the classroom for a portion of time during the rating period and is therefore not rated on the teaching element.  PFR File, Tab 12 at 7, 19.

the agency has: (1) certified its compliance; (2) submitted an SF-50 showing that the appellant has been given an interim appointment to his Professor position at his previous adjusted basic pay, effective the date of the initial decision; (3) made a determination that returning him to the classroom would pose an undue disruption; and (4) so advised the appellant.

Therefore, the only remaining issue is whether the appellant has been denied pay, compensation, or other benefits as terms and conditions of employment, during the pendency of the petition for review.  5 U.S.C. § 7701(b)(2)(B).  We find that he has not.  The evidence submitted by the agency shows that merit increases for faculty are not automatic, PFR File, Tab 12 at 18, 21, and not a condition of employment.[4]  In any event, the agency has shown that the appellant's absence from the classroom will not automatically preclude him from receiving merit increases during subsequent academic years because his eligibility will be based on performance in the remaining two elements.  *Id.* at 19.

For these reasons, the appellant's motion to dismiss is denied.

Conduct Unbecoming.

The administrative judge correctly found that a charge of conduct unbecoming has no specific elements and that, in analyzing such a charge, the Board considers whether the conduct was improper, unsuitable, or detracting from one's character or reputation.  ID at 5; *see Social Security Administration v. Long,* 113 M.S.P.R. 190, ¶ 42 (2010), *aff'd,* 635 F.3d 526 (Fed. Cir. 2011).  The agency must prove its charge by preponderant evidence, which is the degree of relevant evidence that a reasonable person, considering the record as a whole,

_____

[4] The appellant's likening of his situation to overtime is not persuasive.  Generally, overtime pay is compensation that is not required to be paid under an interim relief order.  *McLaughlin v. U.S. Postal Service,* 55 M.S.P.R. 192, 200 (1992),  The only exception is in those instances in which an employee proves that he is entitled to overtime as a term or condition of employment by virtue of law, rule, regulation, collective bargaining agreement, or binding agency policy.  *Id.*  The appellant has made no such showing regarding merit increases.

would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. §§ 1201.4(q), 1201.56(b)(1)(ii).

Specification (1) is sustained.

In this specification, the agency alleged that the appellant referred to two students as "right-wing extremists" or words to that effect.  IAF, Tab 7 at 79.  In an email dated September 26, 2017, he referred to the two as "my right-wing extremists," and then critiqued what he perceived as their unsupported positions on issues about which they had written (anti-gun control and anti-taxes) in connection with an assignment.  IAF, Tab 8 at 135.  In his initial decision, the administrative judge noted that, in the email, the appellant stated that he would have sent the same email to "left-wing extremists," and that "this is not a left-right thing.  It's a justify that thing."[5]  ID at 11; IAF, Tab 8 at 135.  Finding that the email was not "politically discriminatory," the appellant's real message to the students was that they must provide supporting arguments for positions they take, and that is a completely appropriate criticism for a student paper, the administrative judge concluded that the specification does not describe misconduct.  ID at 11-12.

On review, the agency argues that the email was unprofessional because it detracted from the appellant's role as a supervisor, and that, in sending the email, he abdicated his responsibility to be a role model for the students and to show them dignity and respect.  PFR File, Tab 7 at 20-21.  The agency asserts that it charged the appellant with conduct unbecoming, not political discrimination.  *Id.* at 19-20.

That the appellant sent this email is not in dispute.  What is in dispute is whether the email constitutes actionable misconduct.  We find that it does, particularly in the setting of the U.S. Naval Academy.  The mission of the Academy is to develop midshipmen morally, mentally, and physically, and it is

---

[5] The investigatory panel did not find any negative outcomes for any students based on their political beliefs.  IAF, Tab 7 at 99.

expected of all members, military or civilian, that they be examples of the principles the Academy is trying to teach—honor, courage, and commitment. Hearing Transcript (HT) at 11 (testimony of the Commandant of Midshipmen). Midshipmen are supposed to be taught, by word and example, that treating others with dignity and respect is a core tenet of the military professional. HT at 9-10 (testimony of the Commandant of Midshipmen). Therefore, certain types of conversations, which between peers might be considered "joking around," are not acceptable in the very different context of a senior-subordinate relationship. HT at 37-39 (testimony of the Commandant of Midshipmen). The testimony of the Commandant of Midshipmen was echoed by other witnesses, who likewise emphasized the values of dignity and respect, the role of a service academy to instill these values into future officers, and the responsibility of the faculty to exemplify them. HT at 41-42, 45-46, 68, 70 (testimony of a Professor of Mechanical Engineering), 166-67, 174-75 (testimony of the Academic Dean and Provost), 301 (testimony of a Professor of English). Naval Academy instructors have the right to academic freedom within the classroom, but there is a difference between proper pedagogical activities and behavior that is unprofessional or pedagogically inappropriate, and instructors are expected to treat their students with dignity and respect. IAF, Tab 8 at 149-50, Academic Dean and Provost Instruction 1531.63C (Apr. 1, 2016).

We agree with the witnesses who testified that, by labeling two of his students "right-wing extremists," the appellant failed in his duty to treat them with dignity and respect. HT at 16 (testimony of the Commandant of Midshipmen), 308 (testimony of a Professor of English). This specification is sustained. *See Dolezal v. Department of the Army*, 58 M.S.P.R. 64, 66-67 (1993) (upholding a conduct unbecoming charge based on disparaging and demeaning comments the appellant made in an email about a subordinate).

Specifications (2) and (5) are sustained.[6]

In specification (2), the agency charged that, during class, the appellant made comments regarding oral sex, anal sex, and transgender surgery, and in specification (5), that he made comments referring to his own sexual experiences. IAF, Tab 7 at 79.  The appellant did not deny discussing these matters in class, but he disagreed that the discussions were inappropriate.  *Id.* at 125, 133.

The administrative judge agreed with the appellant.  He found that the deciding official failed to consider whether the academic context warranted the discussion of sexual topics, particularly in light of the appellant's academic writing on transgender issues.  He further found that there did not appear to be a rule or policy against discussing such topics or the appellant's own sexual experiences, and that the appellant was not on notice that such discussions were forbidden or greatly restricted.  Therefore, the administrative judge found that the allegations in specifications (2) and (5) did not constitute actionable misconduct, and for that reason, he did not sustain them.  ID at 12-13.

On review, the agency argues that conduct unbecoming does not necessarily require violation of a specific rule, and that there is sufficient evidence to show that many of the appellant's remarks were off-topic or otherwise inappropriate.  PFR File, Tab 7 at 22, 26-27, 42-44.  We agree.  There are certain academic contexts in which discussion and even explicit discussion of sexual material may be proper.  However, the unrebutted hearing testimony shows that the appellant frequently perseverated on these topics even when they were completely unrelated to the course material.[7]    HT at 103 (testimony of Midshipman M.D.), 162-63 (testimony of Midshipman B.G.).  This testimony is consistent with the content of the students' written complaints and the greater

---

[6] We agree with the administrative judge that it is best to address these two specifications together.  ID at 12-13.

[7] Regarding specification (5) in particular, it is difficult to imagine a situation in which it would be appropriate for a professor to share with the class details of his own personal sexual experiences.

part of student responses to the panel inquiry.  IAF, Tab 7 at 117-21, 125-27, 129, 131-33, Tab 8 at 4-119.[8]  Nor does the appellant suggest that his discussion of these matters was confined to situations in which they may have been implicated by course materials.  IAF, Tab 8 at 125-26; IAF, Tab 7 at 33-34.  Furthermore, even to the extent that these discussions may have been related to the course material, and allowing that it is normal for college classroom discussions to stray from the material sometimes, we still find that the nature and extent of the appellant's remarks went beyond what was appropriate.[9]

Specification (3) is sustained.

In specification (3), the agency charged that the appellant emailed partially clothed pictures of himself[10] to students, after having been counseled that doing so was inappropriate and agreeing to not do so in the future.  IAF, Tab 7 at 79.  This conduct was mentioned in two of the student complaints, *id.* at 121, 132, as well as in a number of interview responses, *e.g.*, IAF, Tab 8 at 61, 66, 88, 98, 104, 114, 116.  In his email to the panel, the appellant denied this specification, admitting that he had only sent such a photo to a student 2 years ago, not during the timeframe at issue, and he defended that earlier action as not inappropriate, suggesting that it related to course material.  *Id.* at 125-26.

In addressing this specification, the administrative judge found that there was no dispute that the appellant was counseled for sending partially clothed photos of himself to students in 2015, IAF, Tab 8 at 158-59, and that he again

---

[8]  Some of the interviewees reported that the appellant discussed condom use, transgender surgery, and sexuality, yet also reported that there was no "sexually suggestive language" used.

[9]  Even if we did not sustain specification 2, we find that the charge would still be sustained based upon the remaining specifications.  *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (proof of one or more specifications is enough to sustain charge); *Avant v. Department of the Air Force*, 71 M.S.P.R. 192, 198 (1996) (explaining that if a single charge has multiple specifications, an agency need only prove one specification to sustain the charge).

[10]  Most of the photos were of the appellant shirtless and flexing.  IAF, Tab 8 at 136, 142-45.

engaged in that behavior in 2017, *id.* at 136, Tab 29 at 77-78.    ID at 13. Nonetheless, the administrative judge found that, other than one midshipman, M.D., no one who received the photos appeared particularly offended by them, and that Midshipman M.D.'s claim that he was offended at receiving the photo was "hard to believe."    ID at 13-14.    Concluding that there was no misconduct, the administrative judge did not sustain this specification.    ID at 14.    The agency contests this analysis on review.    PFR File, Tab 7 at 32.

We find that, regardless of whether the appellant believed that sending midshipmen shirtless photos of himself was appropriate, and regardless of whether any recipients of those photos were actually offended, his actions still amounted to conduct unbecoming.    The record shows that, in the fall of 2015, the agency gave the appellant a written and verbal counseling about this very same behavior, notified him that it was inappropriate, required him to retake an anti-harassment training course, and warned him against engaging in such behavior in the future.    IAF, Tab 8 at 159.    The appellant acknowledged, at that time, that sending such photos of himself to students could result in allegations of impropriety, and he agreed to refrain from doing so in the future.    *Id.*    Yet 2 years later, the appellant disregarded the agency's warning and resumed emailing midshipmen shirtless pictures of himself.    IAF, Tab 7 at 121, 132, Tab 8 at 142-45; HT at 55-56.(testimony of Professor K.L.), (testimony of Midshipman M.D.).    That the appellant claims a pedagogical purpose for this is immaterial; he acted contrary to his supervisors' clearly stated expectations, and on that basis, he committed conduct unbecoming.

Specification (4) is sustained.

In specification (4), the agency alleged that the appellant touched students without their approval.    IAF, Tab 7 at 79.    The appellant touching students on their shoulders, head, and neck in an unwanted, unnecessary, and unprofessional manner was mentioned in several complaints, *id.* at 118, 129, 132, as well as in a number of student interviews conducted by the panel, *e.g.*, IAF, Tab 8 at 5, 13,

21, 41, 58, 66, 78.  In his email to the panel, the appellant did not deny the touching, but stated that, because he "can read body language," any such touching was always welcome.  *Id.* at 128.

The administrative judge found that the appellant did touch students, but there was no policy against it and no students were offended.  The administrative judge therefore found that there was no misconduct, and he did not sustain this specification.  ID at 14.

On petition for review, the agency disputes the administrative judge's analysis and argues that it presented sufficient evidence for the Board to sustain this specification.  PFR, Tab 7 at 38, 41.  We agree.  The record shows that the appellant, on one or two occasions, sat next to a student in class and rubbed his back for approximately 15 seconds.  HT at 148-49 (testimony of Midshipman A.B.).  The appellant does not deny this behavior, IAF, Tab 7 at 106-07, and we find that it was inappropriate on its face.  Furthermore, the student at issue testified, unsurprisingly, that the appellant's actions made him feel uncomfortable.[11]  HT at 148-49 (testimony of Midshipman A.B.).  We agree with the agency that this constituted conduct unbecoming.

Specification (6) is sustained.

In specification (6), the agency alleged that the appellant repeatedly mispronounced an Asian-American student's name despite being corrected several times.  IAF, Tab 7 at 79.  The student in question, Midshipman R.J., raised this matter in his complaint, stating that, "especially when angry," the appellant would call him different last names "which were common Asian last names," and that, when corrected, he "always brushed it off, . . . one time even telling [the student] to 'f*** off.'"  *Id.* at 133.  The student's testimony was consistent with his complaint.  HT at 154 (testimony of Midshipman R.J.).  Midshipman R.J. also testified that he believed that the appellant intentionally

---

[11] Although the student's feelings about the appellant's behavior are not dispositive, they lend further support to our finding that it was inappropriate.

called him the wrong name because he repeatedly mispronounced his name despite several corrections, and that he viewed the mispronunciations as a "slap in the face" given his status as a child of immigrant parents who came to the United States with "literally nothing," and given that a family name holds significant honor in his culture.  HT at 155-56 (testimony of Midshipman R.J.).  During the investigation, a number of other students remarked upon the appellant's mispronouncing of names, specifically Asian names.  *See, e.g.*, IAF, Tab 8 at 13, 46, 58, 62, 68, 70, 85.  In his deposition, the appellant stated three times that he did not "recollect" mispronouncing the student's name, although he then denied that it happened after being specifically asked whether he denied mispronouncing the name.  IAF, Tab 28 at 78-79.  In his written reply to the panel, he acknowledged that, while he tries to get names right, he "can't always."  He denied making a "f*** you" comment, IAF, Tab 8 at 129, although that was not specifically what Midshipman R.J. had claimed.

In finding this specification not sustained, the administrative judge questioned Midshipman R.J.'s credibility because, when he was interviewed by the panel, he stated that he was unsure whether the mispronunciation was "done on purpose," and because, while he stated that the appellant used profanity in the classroom, and that two or three times it was directed at him personally, he did not mention the "f*** off" comment.  IAF, Tab 8 at 60; ID at 15.  The administrative judge also found a lack of corroboration of this specification by the rest of the class.  ID at 15.

On review, the agency argues that the administrative judge's credibility determination was not demeanor-based, and that it therefore should not be afforded deference.  PFR File, Tab 7 at 47.  However, the Board has held that a credibility determination made after an in-person hearing is at least implicitly based on witness demeanor.  *Aldridge v. Department of Agriculture*, 111 M.S.P.R. 670, ¶ 11 (2009).  Such demeanor-based credibility determinations are entitled to deference and may only be overturned when the Board has "sufficiently sound"

reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). There are sufficiently sound reasons in this case for us to find Midshipman R.J. a credible witness notwithstanding the administrative judge's finding to the contrary. Midshipman R.J.'s testimony was consistent with his complaint and supported by other students' accounts as to the appellant's mispronouncing of students' names. Although Midshipman R.J. informed the panel that it was "[h]ard to tell if it was done on purpose," he nevertheless "felt it was directed intentionall[y]" at him. IAF, Tab 8 at 60. As stated above, the appellant elected not to testify at the hearing. *See Scott v. Department of Justice*, 69 M.S.P.R. 211, 229 (1995) (noting that, in weighing the evidence, that the appellant did not explain why he did not testify under oath or provide a sworn statement), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996). That the appellant did not recall mispronouncing Midshipman R.J.'s name is not the same as denying that it occurred. *Hillen v. Department of the Army*, 50 M.S.P.R. 293, 302 (1991). His denial, in turn, occurred only after he had stated three times that he did not "recollect" doing so, and only after he was specifically asked whether he denied it. *See Spurlock v. Department of Justice*, 894 F.2d 1328, 1330 (Fed. Cir. 1990) (holding that self-contradiction and imprecision detract from the weight to be accorded the evidence upon which an administrative board bases its decision). For these reasons, we find that Midshipman R.J.'s account is credible and that the appellant engaged in conduct unbecoming as specified.

Specification (7) is sustained.

In this specification, the agency alleged that the appellant made demeaning sexually related comments about an adolescent girl attending a dance with his son and similar offensive comments about the girl's mother. IAF, Tab 7 at 79. Midshipman M.D. reported that the appellant said that the appellant called the girl a "slut" who was "looking for something more," and said that her short dress suggested her sexual intentions. IAF, Tab 7 at 118. According to Midshipman M.D., the appellant then showed the class a photo of the girl with his son, again

focusing on the shortness of her dress, and also made fun of her mother's physical features, skirt length, clothing choices, and parental decision-making. *Id.* at 119. Midshipman M.D.'s hearing testimony was in accord, HT at 100-01 (testimony of Midshipman M.D.), as was the testimony of another student, HT at 158-59 (testimony of Midshipman J.R.). Two of the other students who filed complaints also mentioned this incident, IAF, Tab 7 at 129, 131, as did a number of the students who were interviewed by the panel. *See, e.g.*, IAF, Tab 8 at 7, 11, 13, 15, 17, 21, 25, 27, 29, 31, 33, 37, 41, 82. The appellant admitted to these actions in his email to the panel. *Id.* at 128.

Regarding this specification, the administrative judge found that there was no prohibition against discussing either one's family or sexual topics, and that because there was no misconduct, the specification was not sustained. ID at 15. We disagree with the administrative judge's reasoning.

There is no dispute that the appellant made the comments in question. IAF, Tab 7 at 107-08; ID at 15. An agency is not required to describe in detail all potentially prohibited employee conduct and the resulting discipline. Rather, an agency may reasonably require its employees to exercise good judgment, notwithstanding a lack of literal guidance from an agency rule, regulation, or other statement of policy. *Byers v. Department of Veterans Affairs*, 89 M.S.P.R. 655, ¶ 24 (2001). Here, given the Academy's commitment to the principles of dignity and respect, the appellant should have known that his actions would be considered inappropriate and could constitute actionable misconduct. In particular, the appellant should have known that making demeaning sexual comments about an adolescent would constitute conduct unbecoming a Federal employee. This specification is sustained.

<u>The agency's charge is sustained.</u>

Because we have found all of the specifications sustained, the charge of Conduct Unbecoming is sustained.[12]  *See Johnson v. Small Business Administration*, 97 M.S.P.R. 571, ¶¶ 24-25 (2004).

<u>The agency has established a nexus between the sustained misconduct and the efficiency of the service.</u>

In addition to the requirement that an agency must prove the charge it has brought against the appellant, it must also prove that there is a nexus, i.e., a clear and direct relationship between the articulated grounds for the adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate government interest.  *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 10 (2010).  Here, the charge bears on the Academy's mission of preparing midshipmen morally, mentally, and physically to fulfill their leadership role in the Navy and Marine Corps, and of the importance of training midshipmen to treat others with dignity and respect and to build trust between these future leaders and their subordinates, who will be asked to follow their commands.  HT at 9-10 (testimony of Commandant).  Every member of the Academy, including civilian faculty like the appellant, is expected to act in a manner that reflects the core values and principles being taught.  HT at 11 (testimony of the Commandant).  We therefore find that the agency has established a nexus between the sustained misconduct and the efficiency of the service.  *See Canada*, 113 M.S.P.R. 509, ¶ 11 (finding nexus, based on conduct adversely affecting the agency's mission, when the appellants, who were first-line

---

[12]  As noted, the administrative judge found that the appellant did not establish his claims that, in taking this action, the agency retaliated against him for engaging in whistleblowing, violated his First Amendment rights, and committed harmful procedural error.  ID at 16-18.  The appellant has not filed a petition for review challenging the administrative judge's findings not sustaining any of these affirmative defenses.  Therefore, and because, based on our review, we determine the findings to be well supported, we will not disturb them.  *See* 5 C.F.R. § 1201.115 (providing that the Board normally will consider only issues raised in a timely filed petition or cross petition for review).

supervisors, oversaw a young and impressionable workforce of junior employees who looked to the appellants for guidance and direction).

<u>The agency has shown that removal is a reasonable penalty for the sustained misconduct.</u>

When, as here, all of an agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that management's judgment has been properly exercised. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 12 (2014).

Here, in arriving at his decision to affirm the appellant's removal, the deciding official considered the factors set forth by the Board in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), as appropriate in making a penalty determination. IAF, Tab 7 at 21-24. In so doing, he concurred in the analysis of the *Douglas* factors made by the proposing official. *Id.* at 79-83. The most important of these factors is the nature and seriousness of the offense. *Boo v. Department of Homeland Security*, 122 M.S.P.R 100, ¶ 18 (2014). Regarding this factor, the deciding official found that the appellant's misconduct was intentional and repeated, and that it occurred both in the classroom and in emails to students. IAF, Tab 7 at 21. In considering the appellant's job level and type of employment, the deciding official found that, as a senior faculty member and instructor of future Navy and Marine Corps leaders, the appellant's conduct fell short of the requirement that he establish and maintain a classroom environment that respects the dignity of the individual and develops an appreciation for an appropriate superior-subordinate relationship. *Id.* at 22. The deciding official also considered that, since 2013, the appellant was formally counseled twice and received a letter of reprimand regarding his

unprofessional behavior.  *Id.*  The deciding official noted that the appellant had been formally counseled against sending partially clothed photos of himself to students, yet repeated this conduct.  *Id.* at 23.  Based on the appellant's insistence that his actions were proper and that he is entitled to continue such behavior, the deciding official indicated that, in his view, the appellant lacks rehabilitative potential, stating that he lacks confidence that the appellant will perform at a satisfactory level in the future and change his behavior.  *Id.* at 23-24.  The deciding official also stated that removal is within the range of remedies in the agency's table of penalties for a similar offense of inappropriate conduct.  *Id.* at 24.  The deciding official considered mitigating factors, including the appellant's lengthy service as a faculty member, his satisfactory official performance ratings, and his receipt of performance awards in the 1990s.  *Id.* at 22.  Despite these factors, the administrative judge concluded that removal was the appropriate penalty.  *Id.* at 20.  Apart from a pro forma statement in his initial appeal form, IAF, Tab 1 at 6, the appellant has not contested the agency's penalty determination.

Based on our review, we find that the deciding official carefully considered the appropriate *Douglas* factors, and we agree that removal is within the parameters of reasonableness for the sustained charge.  We therefore defer to the agency's penalty determination.

## NOTICE OF APPEAL RIGHTS[13]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14]  The court of appeals must <u>receive</u> your petition for

---

[14]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195,

review within **60 days** of the <u>date of issuance</u> of this decision.    5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: _____
*Jennifer Everling*

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail

Bruce Fleming
739 Governor Bridge Rd
Davidsonville, Maryland 21035

Appellant Representative

Electronic Service

Jason Ehrenberg
Served on email address registered with MSPB

Agency Representative

Electronic Service

Terrence Cook
Served on email address registered with MSPB

Agency Representative

Electronic Service

Alison Gray
Served on email address registered with MSPB

| | |
|---|---|
| 01/26/2024 | *Dinh Chung* |
| (Date) | Dinh Chung |
| | Case Management Specialist |